FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 16, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARTIN M.,[1]

           Plaintiff,

    v.

FRANK BISGNANO,
Commissioner of Social Security,

           Defendant.

No.   1:25-cv-03085-EFS

**ORDER RULING ON CROSS MOTIONS FOR REMAND AND REMANDING FOR CALCULATION OF BENEFITS FROM FEBRUARY 2016 TO MAY 2021**

Plaintiff Martin M. appeals the denial of benefits by the Administrative Law Judge (ALJ). The parties agree the ALJ erred in his five-step evaluation, but the parties disagree about the appropriate remedy. After reviewing the record and relevant authority, the Court

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

1

2

remands the case for calculation of benefits for the at-issue period of February 9, 2016, to May 31, 2021.

## I.     Background

The Court notes that Plaintiff's appeal comes before the Court with a long history and after Plaintiff has appeared at no less than four separate hearings, and after two separate remand orders entered by this Court.

Plaintiff alleges disability due to degenerative joint disease, psychotic disorder, bipolar disorder, depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and drug addiction in remission.

Due to his physical and mental conditions and reduced functioning, Plaintiff protectively filed for disability insurance benefits and supplemental security income benefits on April 25, 2016, alleging an amended onset date of February 9, 2016.[2] Plaintiff's claims were denied at the initial level and reconsideration levels, and Plaintiff

---

[2] AR 52, 265, 274.

ORDER RULING ON CROSS MOTIONS TO REMAND - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

requested an ALJ hearing.[3] After a hearing before ALJ Marie Palachuk on June 18, 2018, ALJ Palachuk issued an unfavorable decision on August 23, 2018.[4] The Appeals Council denied review on June 14, 2019.[5] Plaintiff appealed to this Court, and the case was remanded by the Court on September 11, 2020.[6] While Plaintiff's claim was pending before the Court, he filed a new claim on February 24, 2020, alleging an onset date of October 1, 2019.[7]

On November 16, 2021, Plaintiff attended a second hearing before ALJ C. Howard Prinsloo.[8] On December 22, 2021, ALJ Prinsloo issued a partially favorable decision, which found Plaintiff disabled on June 21, 2021.[9] On June 22, 2022, the Appeals Council remanded the case

---

[3] AR 134, 145, 1564, 165, 166.

[4] AR 15-37, 40-62.

[5] AR 1-8.

[6] AR 739-767.

[7] AR

[8] AR 658-678.

[9] AR 794-835.

ORDER RULING ON CROSS MOTIONS TO REMAND - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

back for further proceedings, and held that the finding of disability from November 16, 2021, forward would be affirmed but the finding of non-disability prior to that day was reversed.[10]

On July 27, 2023, Plaintiff appeared before ALJ Prinsloo for what was the third administrative hearing, and second hearing with ALJ Prinsloo.[11] On September 22, 2023, ALJ Prinsloo issued a partially favorable decision finding Plaintiff was not disabled prior to June 1, 2021.[12] Plaintiff appealed to this Court and on March 25, 2024, the Court remanded the case for further proceedings upon stipulation of the parties.[13]

On October 31, 2024, Plaintiff appeared with his attorney before ALJ Laura Valente for his fourth hearing.[14] Plaintiff appeared to

---

[10] AR 768-775.

[11] AR 679-697.

[12] AR 623-657, 1819-1853.

[13] AR 1854-1855, 1856-1857.

[14] AR 1794-1818.

ORDER RULING ON CROSS MOTIONS TO REMAND - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

testify, and a vocational expert also testified.[15] On January 7, 2025, following the hearing, and in response to objections raised by Plaintiff's counsel regarding vocational expert testimony, the ALJ sent interrogatories to the vocational expert to complete.[16] On February 5, 2025, the vocational expert returned the interrogatories which recanted his hearing testimony and instead stated that a person given the ALJ's formulated RFC would not be able to work at any job available in the national economy[17] On March 17, 2025, ALJ Valente issued an unfavorable decision, finding that Plaintiff was not disabled during the relevant period of February 9, 2016 to May 31, 2021.[18] Plaintiff then filed this action.

ALJ Valente found:

- Step one: Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016.

---

[15] *Id.*

[16] AR 2028-2032.

[17] AR 2033-2036.

[18] AR 1759-1793.

ORDER RULING ON CROSS MOTIONS TO REMAND - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- Step one: Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of February 9, 2016.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative joint disease, psychotic disorder, bipolar disorder, depressive disorder, anxiety disorder, PTSD, and drug addiction in remission.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Specifically, the ALJ noted that she considered Listings 1.15, 1.16, 12.04, 12.06, and 12.15.

- RFC: Plaintiff had the RFC to perform light work except that:

  [S]tanding and walking, combined, was limited to 2 hours; and sitting was limited to 6 hours. Bilateral upper extremity overhead reaching was limited to occasional. Right lower extremity pushing and pulling, such as for operation of foot pedals, was occasional. The claimant must avoid concentrated exposure to temperature extremes, vibrations and hazards. Posturals were all occasional, and he should never climb ladders, ropes or scaffolds. [Plaintiff] was capable of simple tasks. [Plaintiff] should have no interaction

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

with the general public. He was able to interact occasionally with coworkers and supervisors. He was able to adapt to simple workplace changes.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a Basket Filler (DOT 529.687-010), Egg Sorter (DOT 529.687-074), and Garment Sorter (DOT 222.687-014).[19]

Plaintiff now appeals ALJ Valente's denial of disability and asks for an immediate award of benefits.[20] The Commissioner concedes the ALJ erred when relying upon the vocational expert's later recanted hearing testimony at step five, but the Commissioner asks the Court to remand the matter for further administrative proceedings because there are evidentiary conflicts that must be resolved by the ALJ.[21]

---

[19] AR 1768-1780.

[20] ECF Nos. 1, 8, 13.

[21] ECF No. 12.

ORDER RULING ON CROSS MOTIONS TO REMAND - 7

1

## II.    Analysis

2

## A.    Remand Standard

3

4

When a harmful error occurs in the administrative proceeding,

5

remand for further administrative proceedings is the usual course

6

absent rare circumstances.[22] Three factors must be satisfied for the

7

court to consider remand for payment of benefits:

8

> (1) the record has been fully developed and further
> administrative proceedings would serve no useful purpose;
> (2) the ALJ has failed to provide legally sufficient reasons for
> rejecting evidence, whether claimant testimony or medical
> opinion; and (3) if the improperly discredited evidence were
> credited as true, the ALJ would be required to find the
> claimant disabled on remand.[23]

9

10

11

12

13

When these factors are satisfied, the decision whether to remand for

14

benefits or further proceedings is within the court's discretion, as it "is

15

16

17

18

[22] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th

19

Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744

20

(1985)).

21

[23] *Id.* at 1101; *Garrison v. Colvin*, 759 F. 3d 995, 1010 (9th Cir. 2014),

22

23

a fact-bound determination that arises in an infinite variety of contexts."[24]

## B.    Remand Analysis – Error at Step Five

The parties agree the second factor is satisfied: the ALJ erred in relying upon the testimony of the vocational expert (VE) that there were jobs available in the national economy which Plaintiff could perform.  Specifically, the parties agree that the ALJ failed to adequately explain why she relied upon the vocational expert's hearing testimony that Plaintiff could perform the three jobs of basket filler, egg sorter, and garment sorter, rather than the expert's later written statement that there were no jobs that fit within the hypothetical.

### 1.    Legal Standard

At step five, the ALJ has the burden to identify specific jobs existing in substantial numbers in the national economy that claimant

---

[24] *Id.* at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

can perform despite their identified limitations.[25] At an administrative hearing, an ALJ may solicit vocational expert testimony as to the availability of jobs in the national economy.[26] A vocational expert's testimony may constitute substantial evidence of the number of jobs that exist in the national economy.[27] The ALJ's decision regarding the number of alternative occupations must be supported by substantial evidence.[28]

At step five, the ALJ considers the claimant's background and RFC, along with the testimony of the vocational expert, to decide whether the claimant can perform available jobs notwithstanding his

---

[25] *Johnson v. Shalala*, 50 F.3d 1428, 1432 (9th Cir. 1995). *See* 20 C.F.R. § 416.920(g).

[26] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 2011).

[27] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

[28] *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013) (unpublished). *See Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

1

2

3

4

5

6

functional limitations.[29] If the vocational expert's "opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled":[30]

7

8

9

10

11

12

13

> For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected. This is not to say that ALJs are free to disregard the *Dictionary's* definitions or take them with a grain of salt—they aren't. But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required.[31]

14

15

16

17

18

---

[29] 20 C.F.R. §§ 416.920(g), 416.960(c); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Hill*, 698 F.3d at 1161.

19

[30] *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016).

20

21

22

23

[31] *Id.* at 808; *see also* SSR 00-4p ("When a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible

1

2

3

The ALJ—and the reviewing court—are to consider not only the *Dictionary* and SCO, but also common experience, to determine whether there is an apparent conflict.[32]

4

5

   2.    The ALJ's Findings

6

The ALJ articulated her reasoning  as follows:

7

8

9

10

11

12

13

14

15

> Although categorized as light jobs by the DOT, which generally requires standing and walking for a significant portion of an 8-hour workday, the vocational expert testified that these positions could be performed in the seated position, as these jobs are typically performed in the seated position, and he provided the example of how an egg sorter performs his or her duties. The vocational expert testified that he has observed these jobs and performed job analyses of these jobs for over 40 years. Aside from this discrepancy, the vocational expert stated that his testimony was consistent with the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO), which the undersigned finds reasonable.

16

17

18

conflict between that [vocational expert] . . . evidence and information provided in the [*Dictionary*].").

19

20

[32] *Lamear v. Berryhill*, 865 F.3d 1201, 1205–06 (9th Cir. 2017); *see also*

21

SSR 00-4p (requiring the ALJ to consider the *Dictionary* and SCO);

22

SSR 83-14 (referencing the *Dictionary* and SCO).

23

ORDER RULING ON CROSS MOTIONS TO REMAND - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

After the hearing, the undersigned requested that the vocational expert provide answers to a vocational interrogatory in compliance with Social Security Ruling 24-3p. Ex. 33E; 34E. Although the vocational expert indicated on the interrogatory that an individual could not perform any occupations with jobs that exist in the national economy, he provided testimony at the hearing that the claimant could perform the representative occupations identified above, which the undersigned finds more persuasive, as he had an opportunity to clarify any questions he had at the hearing, whereas he did not explain the discrepancy on the interrogatory. Ex. 34E/3; Hearing Testimony.

Pursuant to SSR 24-3p, the vocational expert also identified the data sources he relied on and provided his general approach to estimating job numbers. The vocational expert reported that he relied on the Dictionary of Occupational Titles (DOT), the Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (SCO), which he supplemented with information provided by the U.S. Bureau of Labor Statistics (BLS) and Skill Tran-Job Browser Pro, and electronic vocational tool that provides DOT specific, full-time occupational estimates of jobs across the U.S. economy. Ex. 16E/2. With respect to his general approach to estimating job numbers, the vocational expert reported that he relied on the DOT, the U.S. Bureau of Labor Statistics, the U.S. Bureau of Labor Statistics Crosswalk to DOT, and Occupational Outlook to analyzing jobs. Ex. 34E/4. Based on the above information, the vocational expert's testimony is accepted in accordance with SSR 24-3p.[33]

---

[33] AR 1780-1781.

1

2

3

4

5

The Court notes that the limitations articulated and explained by the ALJ in the written interrogatories propounded to the vocational expert are identical to those contained in the formulated RFC.

6

      3.      <u>Relevant Testimony and Facts</u>

7

           *i.*      *The VE's hearing testimony*

8

9

At the hearing, the following exchange took place between the VE and Plaintiff's counsel:

10

11

> Q Okay. With the jobs you cited earlier, what was the source for the job numbers you provided us?

12

13

14

> A The Bureau of Labor Statistics primarily and they have the American community crossblocks matrix -- the occupational crossblocks in 2020 and that's directed from the Office of Occupational Statistics and Employment Projections.

15

16

> Q Okay. And does that source provide numbers on an individual DOT basis?

17

18

> A Yes, Sir. They have a 50C code that crosswalks to the DOT. And if you want to inquire, go ahead and contact the DLS and DBC and they can do that.

19

20

21

> Q. Okay. So, the numbers are provided from the SOC code and then you're saying that this source then narrows it down to the specific DOT code?

22

23

> A Yes, that's my understanding from speaking to them. I visited their office in the past when I've been in D.C.

ORDER RULING ON CROSS MOTIONS TO REMAND - 14

1

2

Q Okay. And that's the American Community Crosswalk. Is that what you called it?

3

4

A DLS Labor Statistics in the American Community Crosswalk, yes. And occupational crosswalk of the Office of Occupational Projections and Employment Statistics.

5

6

7

Q Okay. And the jobs that you cited, are they full-time only jobs or have they been -~ is that something that's clear from the Source?[34]

8

### ii.    Counsel's objection to the VE's hearing testimony

9

10

On November 4, 2024, Plaintiff's counsel filed a written objection to the VE's testimony.  The letter stated:

11

12

13

14

15

The VE's testimony regarding job numbers cannot be relied upon. There are no statistics that directly track the employment numbers under the Dictionary of Occupational Titles (DOT). E.g. Browning v. Colvin, 766 F.3d 702, 709 (7th Cir. 2014) ("There is no official source of number of jobs for each job classification in the Dictionary of Occupational Titles...").[35]

16

He went to argue further:

17

18

The VE described that his methodology involved utilizing data from the BLS and the "crosswalk" for the American

19

20

[34] AR 1816-1817.

21

[35] AR 2022-2023.

22

23

1

2

3

4

5

6

7

8

9

10

11

12

13

Community Surveys matrix to reach his employment measure. Different programs and surveys for job data will classify their job data differently, and a division of the BLS publishes "crosswalks" to allow comparison and analyses between these different classification systems. See https://bls.gov/emp/documentation/crosswalks.htm The Bureau of Labor Statistics (BLS) and State Workforce Agencies (SWAs) work together in a federal-state cooperative program to generate the Occupational Employment Statistics (OES) program using the Standard Occupational Classification (SOC) system—but all OES estimates are of SOC occupations, and not by DOT codes. See https://www.bls.gov/oes/oes_emp.htm. The crosswalk referenced by the VE operates by matching the classification of employment numbers from the "American Community Surveys" (ACS) with the BLS classification by SOC groups. Therefore, the VE's methodology was providing an estimate of job numbers for an entire group of occupations and DOT codes and would not accurately reflect the number of jobs for the specific DOT codes which he cited.[36]

14

15

16

17

18

19

He went on to note that Skill Tran Job Browser Pro was a version of the DOT accepted by the Social Security Administration, according to a memo authored by Susan Swansiger, Director of Division of Field Procedures, and that according to Job Browser Pro there are an estimated 15 positions for a garment sorter, 147 positions for a basket

20

21

22

23

---

[36] AR 2023.

1

filler, and 181 positions for an egg candler.[37]

2

    4.    <u>Analysis</u>

3

4

The Commissioner concedes that the VE "essentially recanted his

5

hearing testimony, and opined through interrogatories that there were

6

not jobs Plaintiff could perform in significant numbers within

7

Plaintiff's residual functional capacity."[38]  Elsewhere in his brief, he

8

argued that the VE's hearing testimony was reliable despite the fact

9

that it provides numbers that conflict with those provided by Job

10

Browser Pro, and stated:

11

12

> …the vocational expert explained that the [sic] relied
> primarily on Bureau of Labor Statistics data but also used
> the "American community crossblocks matrix" that provided
> numbers specific to a DOT code.  See AR 1816-17.  While it
> appears that the vocational expert was referring to the
> National Employment Matrix, which provides SOC
> occupation equivalents from the American Community
> Survey (ACS), he explained that the sources he used also
> provided numbers on an individual job basis narrowed down
> to the specific DOT code. AR 1816-17.[39]

13

14

15

16

17

18

19

20

[37] *Id.*

21

[38] ECF No. 12, pgs. 20-21.

22

[39] ECF No. 12, pg. 19.

23

ORDER RULING ON CROSS MOTIONS TO REMAND - 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

The Commissioner errs in this argument. The VE did not state that he used methods other than his reliance on the "American community crossblocks matrix." After Plaintiff's counsel provided information that this was incorrect the VE recanted his testimony and stated that there were no jobs that fit within the hypothetical.

The written interrogatories sent to the VE after the hearing were clearly sent as a result of the objections raised by Plaintiff's counsel and the VE's responses can be presumed to be based upon the newer information provided. On another record, the Court might provide deference and give a second bite at the apple to allow the ALJ to query the VE further, but on this record it declines to do so. This is the fourth hearing in this matter, and the Court sees no reason to put Plaintiff through a fifth hearing when the VE's reasoning and intent is clear.

The Court concludes that the record establishes disability given that the hypothetical considered by the VE is identical to the ALJ's formulated RFC. In his interrogatory responses, the VE stated given that specific RFC there were no jobs that Plaintiff could perform during the relevant period. Remanding the case for further proceedings will

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

serve no useful purpose. Accordingly, the Court concludes that Plaintiff has met his burden to establish disability based on the record for the period in question and remands for calculation of benefits.

**C.    Other Issues: The Court finds all other issues moot.**

Plaintiff argues the ALJ erred in her evaluation of the medical opinions and assessment of Plaintiff's subjective complaints. Because the Court has remanded the case for an award of benefits, these issues are moot.

### III.    Conclusion

Remand for an award of benefits is appropriate. Based upon the VE's interrogatory responses, a person of Plaintiff's age, education, and past relevant work history, assessed with the limitations determined by the ALJ, would not be able to find and sustain work in the national economy. There is no useful purpose in remanding for furthering proceedings.[40]

Accordingly, **IT IS HEREBY ORDERED**:

---

[40] *See Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    1.     The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for a calculation of benefits pursuant to sentence four of 42 U.S.C. § 405(g) for the period of February 9, 2016, to May 31, 2021.

    2.     The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 12,** enter **JUDGMENT** in favor of **Plaintiff**.

    3.     The case shall be **CLOSED**.

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 16th day of December, 2025.

*Edward F. Shea*

EDWARD F. SHEA
Senior United States District Judge